**Alyson D. GRANT, Appellant,**

v.

**The MAY DEPARTMENT STORES COMPANY d/b/a Hecht's, Appellee.**

No. 00–CV–1493.

District of Columbia Court of Appeals.

Submitted Oct. 25, 2001.

Decided Dec. 6, 2001.

Alan Lescht, Washington, DC, was on the brief, for appellant.

Christopher A. Weals, Washington, DC, was on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Alyson D. Grant (Grant) contends that the trial court committed error by granting May Department Store's (Hecht's) motion for summary judgment dismissing her claims for denial of reasonable accommodations due to a disability and retaliation, both alleged to be in violation of the District of Columbia Human Rights Act (DCHRA). We affirm in part, and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts*

In October 1996, Grant began working for Hecht's at Metro Center. Initially she worked in the cosmetic department as a "floater," where she would substitute for employees who were absent. After being employed for a few weeks, Grant was promoted to a position at the Chanel cosmetic counter.

Grant was diagnosed with diabetes in 1993 and she became pregnant in late 1996. In January 1997, Grant was hospitalized for two days to begin receiving insulin. Around the time she was hospitalized, Grant informed her supervisor, Shelly Dean (Dean), and other Hecht's employees that she had diabetes and was taking insulin. In Grant's deposition she described her diabetic condition as causing highs and lows in her blood sugar, which in turn could affect walking, vision, speech and her ability to work. Through diligent monitoring, diet, and insulin use, Grant was able to control her blood sugar levels.

On May 3, 1997, Grant had her first performance evaluation. She received an unacceptable rating, was criticized for dress code violations, and was placed on probation. According to Walter Risser, the regional retail manager for Chanel, all the personnel at the counter received unfavorable reviews and were placed on probation because counter sales were down.

On or about June 12, 1997, following a consultation with Dr. Mims, Grant requested a schedule change to day shifts only. Grant first approached Dean, who told her to speak with the Human Resources Manager, E.J. Gonzalez (Gonzalez), as Dean did not have the authority to change her schedule. All the positions in the cosmetic department required that employees work two evenings a week as well as two Saturdays and one Sunday every three weeks. Grant approached Gonzalez for a schedule change; Grant alleges that Gonzalez said the only way he could change her schedule was if she worked part time. On June 17, 1997, Grant talked with someone at the Equal Employment Opportunities Commission (EEOC) to

"check the law" on schedule accommodations. Grant told Dean that she had talked with someone at the EEOC. Dean testified via deposition that Grant stated that she felt discriminated against based on her diabetes. Grant testified in her deposition that shortly after she spoke with Dean, Gonzalez called her, stating that he never said she could not have a schedule change, just that he needed a doctor's note to grant the change.

On or about July 8, 1997, Grant submitted a doctor's note to Gonzalez. Gonzalez faxed the note to Jeff Lindeman (Lindeman), the Manager of Labor and Employee Relations for Hecht's. Lindeman and Gonzalez together concluded that Grant's request needed further clarification, according to Gonzalez. Gonzalez called Dr. Mims, Grant's doctor, seeking this clarification. Following the conversation with the doctor, Gonzalez offered Grant the use of a refrigerator, to store her insulin at work. Gonzalez believed access to a refrigerator eliminated the need for the requested schedule change. Grant rejected this proposal. Grant cancelled an appointment with the EEOC because she believed Gonzalez was going to accommodate her schedule change after receiving a doctor's note. When this did not occur, Grant filed a formal complaint of discrimination with the EEOC on July 10, 1997.

Gonzalez informed Grant that she needed to fill out the Family and Medical Leave Act form. Grant refused to sign the form, asserting that she was not applying for family medical leave, but a modified work schedule under the Americans with Disabilities Act (ADA). Grant also was asked to have her doctor fill out a certification form. Dr. Mims completed the medical certification form on August 7, 1997, and Grant submitted the certification to Hecht's on or about August 12, 1997. A few days later, Gonzalez informed Grant

that her schedule had been modified to days only. Grant maintained a modified schedule until her last day at work, August 22, 1997, before she took maternity leave.

On or about August 16, 1997, Grant had her second performance evaluation. In this evaluation Grant showed improvement; she received a raise, and the personnel at the counter were taken off probation. Grant also received two dress code violation notices. A co-worker of Grant's, Lydelle St. Jules, testified via deposition that management changed its attitude toward Grant during her pregnancy and Cheryl Claus, a supervisor of Grant's, stated that Hecht's management was "looking for a way to intimidate her or get rid of her given that she filed a complaint."

On August 21, 1997, Michael Lawson and Avis Hayes, members of Hecht's security staff, conducted a one hour long interview of Grant. Her name had appeared on a computer database used by Hecht's to track employees' purchases and returns. The database only retained records for a few months. The report indicated that Grant had returned items she had not purchased, or had not purchased within the time of the report. Ultimately, the investigation was terminated without any adverse action being taken against Grant.

In the fall of 1997, when Grant was able to return to work, her position at the Chanel counter no longer was available. Grant did not wish to return to the Metro Center Hecht's location. Grant interviewed for the Estee Lauder cosmetic counter job in the Prince George's Plaza Hecht's but did not receive an offer for the position. Hecht's offered Grant the floater position in the Metro Center location, under the supervision of Dean, and sales positions in the Prince George's Plaza store. Grant did not accept these offers and Hecht's management viewed Grant's

failure to accept the offers as a resignation.

### B. *Procedure*

Grant sued Hecht's alleging: (1) failure to reasonably accommodate her disability in violation of the DCHRA; (2) retaliation in violation of the DCHRA; and (3) failure to restore Grant to an equivalent position upon her return from maternity leave, in violation of the District of Columbia Family Medical Leave Act (DCFMLA). Hecht's moved for summary judgment on all three counts arguing that Grant had not: (1) stated a claim for disability discrimination because she failed to allege that she had a disability under the DCHRA; (2) made out a prima facie case of retaliation under the DCHRA; and (3) stated a cause of action under the DCFMLA, because she was not an eligible employee for protection under the DCFMLA. The trial court granted summary judgment for the defendant on all counts by Memorandum Opinion and Order dated July 22, 1999.

After Grant's motion for reconsideration was denied, she appealed. We remanded the case to the trial court for reconsideration after the trial court informed us of its intent to reconsider the motion for summary judgment based on the trial court's failure "as a result of oversight, to consider the merits of one of [Grant's] two discrimination claims that … [were] in her 'Amended Complaint'." Upon reconsideration, the trial court again granted summary judgment on all claims. In the present appeal, Grant asserts the trial court erred with respect to two of her three claims: (1) the claim with respect to reasonable accommodation, and (2) retaliation.

### II. ANALYSIS

■ To prevail on a motion for summary judgment, a party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nader v. de Toledano,* 408 A.2d 31, 41 (D.C.1979); Super. Ct. Civ. R. 56(c). The moving party carries the burden of proving that no genuine issue of fact is in dispute. The pleadings, depositions, and affidavits admitted in support of the motion must be viewed in the light most favorable to the non-moving party. *Nader, supra,* 408 A.2d at 42. Once the movant has made an initial showing that there is no genuine issue of material fact, the non-moving party then has the burden to show that an issue does exist. *Id.; O'Donnell v. Associated Gen. Contractors of Am., Inc.,* 645 A.2d 1084, 1086 (D.C. 1994). We review the grant of a motion for summary judgment *de novo,* applying the same standard utilized by the trial court. *Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C.1994) (en banc).

### A. *Disability Discrimination Under the Human Rights Act*

■ In order to establish a prima facie case under the DCHRA, Grant must show that she has a disability and that a reasonable accommodation could have been made by Hecht's for that disability. *See American Univ. v. District of Columbia Comm'n on Human Rights,* 598 A.2d 416, 422 (D.C. 1991). The DCHRA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C.Code § 2–1401.02(5A) (2001), formerly D.C.Code § 1–2502(5A). The definition of "disability" is substantially similar to the definition found in the ADA and EEOC regulations. 42 U.S.C. § 12102(2); 29 C.F.R. § 1614.203(a). We have considered decisions construing the ADA as persuasive in our decisions construing compara-

ble sections of DCHRA. *See, e.g., Howard Univ. v. Green,* 652 A.2d 41, 45 (D.C.1994); *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 367–68 (D.C.1993); *Lyles v. District of Columbia Dep't of Employment Servs.,* 572 A.2d 81, 82–3 (D.C.1990). A "major life activity" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Croley v. Republican Nat'l Comm.,* 759 A.2d 682, 700 n. 18 (D.C.2000) (citing EEOC regulation at 29 C.F.R. § 1630.2(i)). The "substantial limits" language requires an individual that has a disability to be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity ..." *Id.* at 700 n. 17 (citing 29 C.F.R. § 1630.2(j)(3)(i)).

■ Grant contends that she was denied reasonable accommodations by her employer Hecht's. However, she does not address directly how her insulin dependent diabetic condition is a disability under the DCHRA. Grant asserts that "absent taking the proper amount of insulin, [she] could lose her sight, suffer kidney damage, and die." Hecht's argues that Grant's diabetic condition is controlled fully by medication; therefore, her condition does not substantially limit any of her major life activities, which is a requirement to have a qualifying disability.

In granting summary judgment on Grant's DCHRA claim, the trial court held that Grant failed to demonstrate that any genuine issues of material fact existed as to whether she had a disability within the meaning of the DCHRA. In view of that holding, the trial court was not required to, and did not, consider whether Grant had established that a reasonable accommodation could have been made by Hecht's for her disability. Like the trial court, we turn our attention to the issue: did Grant have a disability within the meaning of the DCHRA.

The Supreme Court has addressed the issue of whether mitigating factors are considered in determining disability. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In *Sutton,* the Supreme Court found that "[a] person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." *Id.* at 483, 119 S.Ct. 2139.[1] *See also Croley, supra,* 759 A.2d at 701 (where we discussed the rationale of *Sutton*). The Supreme Court in *Sutton* noted that if mitigation was not considered it "would ... force [courts and employers] to make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition." *Sutton, supra,* 527 U.S. at 483, 119 S.Ct.

---

1. The EEOC Interpretive Guidance section states that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." Interpretive Guidance, 29 C.F.R. § 1630.2(j). The guidelines specifically offer the example of "a diabetic who without insulin would lapse into a coma would be sub-stantially limited because the individual cannot perform major life activities without the aid of medication." *Id.* In *Sutton* the Supreme Court disagreed with the EEOC Guidelines, asserting that "[t]he agency guidelines' directive that persons be judged in their uncorrected or unmitigated state runs directly counter to the individualized inquiry mandated by the ADA." *Sutton, supra,* 527 U.S. at 483, 119 S.Ct. 2139.

2139. As an example the Supreme Court described the case of a diabetic taking insulin. If the mitigating measures were ignored "all diabetics [would be found] to be disabled, because if they failed to monitor their blood sugar levels and administer insulin, they would almost certainly be substantially limited in one or more major life activities." *Id. See also Murphy v. United Parcel Serv.*, 527 U.S. 516, 520, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (applying the rationale of *Sutton* to conclude that petitioner is not 'disabled,' as the mediating factor—medication—is taken into consideration when assessing whether petitioner is substantially limited in any major life activity).

In her deposition, Grant stated that while on insulin for diabetes she felt "pretty good," could take care of herself, and did not have problems with her vision or walking. While Grant has a physical impairment—diabetes—her impairment is mitigated by insulin use. When taking insulin Grant is not "substantially limited" in any major life activities. Mitigating measures, specifically insulin use, are taken into account when considering whether an individual has a disability under the DCHRA. The trial court did not err in concluding no "disability" and thus granting summary judgment on the "disability/accommodation claim."

## B. *Retaliation Under the Human Rights Act*

The DCHRA makes it an unlawful discriminatory practice for an employer to retaliate against an employee due to her opposition to any practice made unlawful by the DCHRA. *Howard Univ., supra*, 652 A.2d at 45. The anti-retaliation provision of the DCHRA states:

It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

D.C.Code § 2–1402.61(a) (2001), formerly D.C.Code § 1–2525(a).

■ Grant alleges that Hecht's retaliated against her for having filed a charge of discrimination against Hecht's and for exercising her rights under the DCHRA to requested accommodations by subjecting her to harassment, disparate treatment, discipline, denying her the right to be reassigned to a vacant job she was qualified for that had a set schedule, not restoring her to a comparable job after completing medical leave, denying reasonable accommodations, and ultimately, terminating her employment. Hecht's argues that Grant's evidence is insufficient to create a genuine issue of material fact as to any of the three elements of her prima facie case.

The trial court's opinion, citing *Paquin v. Federal National Mortgage Ass'n*, 935 F.Supp. 26, 34 (D.D.C.1996), stated the applicable test as follows: "Retaliation requires that (i) plaintiff is engaged in a protected activity; (ii) there is some adverse impact on the plaintiff; and (iii) the adverse impact is causally related to the exercises of the protected activity." *Grant v. May Dep't Stores, Inc.*, No. 97–CA–9332 (D.C.Super.Ct. July 22, 1999). Furthermore, the trial court opinion stated: "[a]n essential element of a retaliation claim … is that the plaintiff was engaged in a protected activity under the DCHRA. Here, the plaintiff is not entitled to the protections of the DCHRA because she does not suffer from a disability, and therefore, she cannot maintain a claim of retaliation under the DCHRA." *Id.* (citing *Passer v. Am. Chem. Soc'y*, 290 U.S.App. D.C. 156, 158, 935 F.2d 322, 332 (D.C.Cir.1991)).

In sum, the trial court concluded that since Grant's insulin mitigated her diabetic condition, her condition did not constitute a "disability." Thus, her complaint relating to it under the DCHRA was not an activity protected under DCHRA. *Id.* In so holding, the trial court misperceived the law.

We stated the test in *Howard University, supra,* 652 A.2d at 45, that to make out a prima facie case of retaliation, the plaintiff must establish: "(1) she was engaged in a protected activity, or that she opposed practices made unlawful by the DCHRA; (2) the employer took an adverse personnel action against her; and (3) a causal connection existed between the two." *Accord, Millstein v. Henske,* 722 A.2d 850, 853 (D.C.1999).

With respect to the first element, we held: "to make out a claim for retaliation, the plaintiff need only prove she had a reasonable good faith belief that the practice she opposed was unlawful under the DCHRA, not that it actually violated the Act." *Howard Univ., supra,* 652 A.2d at 46 (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2nd Cir.1988)). *See also Goos v. National Ass'n of Realtors,* 715 F.Supp. 2, 3 (D.D.C.1989). In *Howard University,* we further stated: "in a retaliation action a plaintiff is not required to prove that the activity which she opposed constituted an actual violation of the Act, but she nonetheless must voice her complaint about, or oppose, the allegedly unlawful activity in order to prevail on her claim." *Howard Univ., supra,* 652 A.2d at 46; *accord, Carter–Obayuwana v. Howard Univ.,* 764 A.2d 779, 790–91 (D.C.2001).

To establish a prima facie case Grant needs to show either that she engaged in protected activity or had a reasonable good faith belief that the practice she opposed was unlawful. The conclusion that Grant does not suffer a disability falling under the protections of the DCHRA is not dispositive. The trial court did not consider whether Grant "had a reasonable good faith belief that the practice she opposed was unlawful under the D.C.H.R.A." as distinguished from whether it "actually violated the Act." *Id.* Having applied an erroneous legal test, the trial court erred in granting summary judgment on the retaliation claim. *Bussineau v. President and Dirs. of Georgetown Coll.,* 518 A.2d 423, 425 (D.C.1986). The summary judgment on retaliation is reversed.

## CONCLUSION

We affirm the trial court's grant of summary judgment against Grant's DCHRA disability discrimination claim. We reverse the grant of summary judgment on the retaliation claim. We remand for further proceedings consistent with this opinion.[2]

*So ordered.*

---

**2.** Hecht's asserted several grounds for summary judgment on the retaliation claim. The trial court ruled on only one of them. In the circumstances of this case, so do we. *Compare Vaughn v. United States,* 579 A.2d 170, 172–73 (D.C.1990).