987

Garnetta L. HUNT, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 12–CV–498.

District of Columbia Court of Appeals.

Argued March 27, 2013.
Decided May 2, 2013.

J. Michael Hannon, Washington, D.C., for appellant.

Richard S. Love, Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellees.

Before BLACKBURNE–RIGSBY and EASTERLY, Associate Judges, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

Garnetta L. Hunt (Hunt), formerly a correctional officer with the rank of Sergeant with the District of Columbia Department of Corrections (DOC), filed suit alleging that she had not been provided with a reasonable accommodation for a disability—mainly psychological—that she sustained after being attacked by a jail inmate. Hunt claimed discrimination based on her disability, in violation of the District of Columbia Human Rights Act (DCHRA), D.C.Code § 2–1401 *et seq.* (2001), intentional interference with contractual relations, and intentional infliction of emotional distress. The Superior Court (Bartnoff, J.) granted summary judgment to the District of Columbia and two named DOC officials on all of the claims. On appeal, Hunt argues primarily that triable issues of fact precluded summary judgment on whether DOC had reasonably accommodated her disability either by changes to her job at the Jail[1] or by providing her with a new job away from the Jail where she would have no contact with inmates. Like Judge Bartnoff, we conclude that Hunt failed as a matter of law to show (a) that even with accommodations for her disability, she was able to perform the essential duties of her position at the Jail; (b) that other jobs with DOC existed at the time for which she was qualified and to which she could therefore be transferred; and (c) that DOC breached a duty under the governing statute to engage in an "interactive process" to identify possible alternative jobs. Because Hunt's additional causes of action failed

---

1. By "the Jail" we refer to the Central Detention Facility where Hunt was employed.

also as a matter of law, we affirm the grant of summary judgment.

## I.

The following facts, drawn from depositions and other proffered materials, are not disputed. On March 23, 2004, while on duty at the Jail, Hunt suffered head, neck, and shoulder injuries from an attack by an inmate. She was hospitalized for these injuries and also diagnosed with Post-Traumatic Stress Disorder (PTSD), for which she received treatment from a psychiatrist and other mental health professionals. After a prolonged absence during which she was treated and received worker's compensation, she returned to work on April 18, 2006. At that time, her treating psychiatrist stated in a letter that she could work, on a trial basis, but only if the position she were assigned to had limited contact with inmates. DOC therefore assigned her to a post at the staff entrance to the Jail, where she would not regularly come into contact with inmates; and, to further insulate her from such contact, it no longer required her to attend roll call.

Nevertheless, Hunt experienced three succeeding panic attacks. The first two occurred after she had incidental contact with inmates while going from one place to another within the facility. The third, on September 26, 2006, occurred when she heard inmates in a nearby hallway pounding on a secure door to which she controlled access. As a result, Hunt was placed on administrative leave until November 29, 2006, when (after her pay was terminated because she had failed to furnish a "medical evaluation") she obtained a note from a treating therapist that she could resume work if assigned to a post where she had *no* direct contact with inmates. As this had not proved feasible, she remained on leave without pay.

More than a year later, a DOC official (Captain Watford) again talked to Hunt about possible positions at the jail involving limited contact with inmates. One was in the motor pool, the other in the records office, but both locations, although "outside the perimeter of the jail setting," entailed some "limited contact with inmates."[2] Hunt's reassignment to one of those jobs, according to Watford, would depend "on what her doctor provided to the agency to [enable it] to make a decision." On July 16, 2008, however, her treating psychiatrist wrote to DOC that Hunt "ha[d] not been able to work in a working environment around inmates, and it is very unlikely that she will ever be able to work in the same capacity.... Patients suffering from [PTSD,] when exposed to [the] same or similar environment, almost always relapse." Although the doctor noted that Hunt's "prognosis is fair for a possible employment in another field with proper training," Judge Bartnoff correctly pointed out that Hunt "[did] not claim [in the trial court]—and there is nothing in the record to suggest—that she ever pursued the possibility of some other type of employment with DOC after that letter was submitted." At the time of the trial court proceedings, Hunt had not been terminated formally, but she had not been reassigned or allowed to return to her most recent post and was unpaid.

## II.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue with regard to any material fact and, therefore,

---

**2.** The affidavit of DOC Warden Simon Wainwright explained that "[t]here are no jobs, assignment or positions for D.C. Correctional officers that do not involve at least some minimal contact or interaction with inmates," particularly "in the event of an emergency."

that it is entitled to judgment in its favor as a matter of law. *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583 (D.C.2001) (citing, *inter alia*, Super. Ct. Civ. R. 56(c)). In ruling on a motion for summary judgment, the trial court must read the pleadings and other materials submitted in the light most favorable to the non-moving party, *id.* (citing *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979)), and decide whether, viewed in that light, the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Stated otherwise, "a plaintiff's mere speculations are insufficient to create a genuine issue of fact" and thus withstand summary judgment. *Cain v. Reinoso*, 43 A.3d 302, 313 (D.C.2012). We review the grant of summary judgment *de novo*, applying the same standard used by the trial court. *Grant*, 786 A.2d at 583.

### III.

■ The DCHRA makes it an "unlawful discriminatory practice" for an employer, with respect to compensation or the terms of employment, to discharge or otherwise discriminate against an employee "based upon [a] ... disability...." D.C.Code § 2–1402.11(a)(1) (2006 Supp.). For purposes of summary judgment, Judge Bartnoff assumed that Hunt suffered from a "disability," *i.e.*, PTSD that prevented her from working as a correctional officer who had contact with inmates.[3] We proceed on that basis.

■ Our decisions under the DCHRA regarding whether an employee was discriminated against because of a "disability" effectively incorporate judicial construction of related anti-discrimination provisions of the Americans with Disability Act (ADA), 42 U.S.C. § 12102 *et seq.* (2006). *See, e.g., Strass v. Kaiser Found. Health Plan*, 744 A.2d 1000, 1007–09 & n. 8 (D.C.2000). To show unlawful discrimination, an ADA plaintiff with a disability "must prove ... that [s]he was qualified for the position with or without a reasonable accommodation, and that [s]he suffered an adverse employment action because of [her] disability." *Duncan v. Washington Metro. Area Transit Auth.*, 345 U.S.App.D.C. 170, 174, 240 F.3d 1110, 1114 (2001) (internal quotation marks omitted).[4] As Judge Bartnoff recognized, therefore, the question is whether Hunt, with or without "reasonable accommodation," could "perform the essential functions of her position," *Carr v. Reno*, 306 U.S.App.D.C. 217, 221, 23 F.3d 525, 529 (1994)—more precisely, whether she raised triable issues of fact necessary to answering that question.

■ We look first at the position Hunt occupied, a correctional officer at the Jail. In determining the essential functions of a position, courts "generally give substantial weight to the employer's view of job requirements," *Ward v. Massachusetts Health Research Inst.*, 209 F.3d 29, 34 (1st Cir.2000), deference particularly apt for a job such as Hunt's, intimately associated with preserving public safety. We thus reject Hunt's threshold argument that, despite the affidavit of Warden Wainwright, *supra*, note 2, a jury should have been

---

3. Resolution of whether Hunt was disabled, the judge concluded, "turns on factual questions that cannot properly be resolved on summary judgment." For purposes of this appeal, the District does not dispute the fact of Hunt's disability.

4. The issue of whether Hunt "suffered an adverse employment action" was not litigated below and is not before us.

allowed to decide whether "inmate contact [was] an essential job function" of a correctional officer at the jail. Reply Br. for Appellant at 8. Wainwright explained that, particularly in light of foreseeable emergencies, every correctional officer position at DOC had at least the potential for contact with inmates. Hunt offered no expert proof to the contrary, and she has pointed us to no other factors, *see* 29 C.F.R. § 1630.2(n)(3), undermining the warden's assessment that contact with inmates was an essential job function of a correctional officer.

Hunt's principal argument focuses on DOC's alleged twofold failure to make reasonable accommodation for her disability. The District, as it must, acknowledges an employer's duty under the ADA (hence under the DCHRA) to "make reasonable accommodation to the known physical or mental limitations of [a disabled] ... employee ... unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Carr*, 306 U.S.App.D.C. at 221, 23 F.3d at 529 (italics omitted) (quoting 29 C.F.R. § 1614.203(c)). Hunt, for her part, does not dispute that DOC provided her with *an* accommodation when, at her request, it placed her at the staff entrance (and excused her from appearing at roll call), measures that would reduce but not eliminate her contact with inmates. Also undisputed is that Captain Watford discussed with Hunt a reassignment to other positions at the Jail with the same potential to limit, but not eliminate, contact with inmates, but that the 2008 judgment of her psychiatrist made this too unfeasible.

█ Even so, Hunt argues first that a reasonable accommodation she asked DOC

to make, but which it rejected, was the fairly simple one of allowing her, at the onset of any panic attack, "to take a break to get herself together" before returning to her post. Reply Br. for Appellant at 4 (quoting Hunt's deposition testimony that "[w]hen I had the relapse ... [after] the inmates had come down and were banging on the door ... I had just asked for time to get myself together ... because I did fine otherwise").[5] However, permitting Hunt breaks away from her post following "relapse[s]" would have done nothing to alter the underlying panic effect that inmate contact repeatedly had on her, and so prevent future such episodes incompatible with a correctional guard's role. Particularly viewed in this light, DOC's implicit rejection of repeated breaks as an accommodation because they would be an "undue hardship on the operation of" a correctional officer's duty of vigilant attendance, *Carr*, 306 U.S.App.D.C. at 221, 23 F.3d at 529, was irreproachable. The possibility of such breaks as a reasonable accommodation thus presented no triable issue of fact.

Hunt focuses at greater length on the case law establishing that an employer's obligation to make reasonable accommodations may include reassignment of a disabled employee, on request, to a different job if it is vacant and she is qualified for it. As the court stated in *Aka v. Washington Hosp. Ctr.*, 332 U.S.App.D.C. 256, 156 F.3d 1284 (1998):

> [The ADA] defines an "otherwise qualified individual with a disability" to mean someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).... An

5. The trial judge found that this request was "untimely," *i.e.*, not expressly made to DOC at

the time—an issue we need not pursue.

employee seeking reassignment to a vacant position is thus within the definition if, with or without reasonable accommodation, she can perform the essential functions of the employment position to which she seeks reassignment.

*Id.* at 272–73, 156 F.3d at 1300–01 (emphasis omitted); *see Strass,* 744 A.2d at 1007 ("Under the [ADA], . . . the definition of reasonable accommodation includes . . . 'reassignment to a vacant position.' "). Hunt thus argues that, even if her disability kept her from serving as a correctional officer at the Jail, DOC was obliged to consider whether she was qualified for "positions other than in the correctional officer field," Br. for Appellant at 10, such as vacant jobs back at the Grimke Building where administrative functions were quartered. In opposing summary judgment, Hunt provided the trial court with multiple "job postings" for positions away from the Jail that, she claimed, were open at or around the time her problems at the Jail arose. She points out further that, under settled law construing the ADA, DOC was required to engage in an "interactive process" with her, as employee, to determine her suitability for any of these jobs. *See, e.g., Canny v. Dr. Pepper/Seven–Up Bottling Group, Inc.,* 439 F.3d 894, 902 (8th Cir.2006) ("Under the ADA, an employer must engage in an interactive process to identify potential accommodations that could overcome the employee's limitations." (citation omitted)).

▉ On the subject of reassignment as a reasonable accommodation, federal courts have extensively discussed the relation between a plaintiff-employee's burden of proof in ADA litigation and the employer's contemporaneous duty to engage in an interactive process. The widely prevailing view is that "[a]n ADA plaintiff . . . must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned [and] . . . for which she was qualified." *McBride v. BIC Consumer Products Mfg. Co., Inc.,* 583 F.3d 92, 97–98 (2d Cir.2009); *Donahue v. Consol. Rail Corp.,* 224 F.3d 226, 230 (3d Cir.2000) ("[P]laintiff bears the burden of demonstrating . . . that there was a vacant, funded position . . . and . . . that [she] was qualified to perform the essential duties of this job. . . ."); *Peltier v. United States,* 388 F.3d 984, 989 (6th Cir.2004) (same).[6] At the same time, these courts have been sensitive to the duty of good-faith interaction placed on employers by the statute and related regulations, such that "an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA." *McBride,* 583 F.3d at 101; *see Cravens v. Blue Cross & Blue Shield of Kansas City,* 214 F.3d 1011, 1021 (8th Cir.2000) ("[T]he failure of an employer to engage in an interactive process . . . is prima facie evidence that the employer may be acting in bad faith.").

We need not, however, trace the contours of this relationship further because, for two combined reasons, Hunt has not raised a triable issue of whether DOC failed to accommodate her by transfer to a job away from the jail setting. As already pointed out, DOC worked with Hunt, at her request, to restructure her job at the jail to limit inmate contact as far as possible. But, as Judge Bartnoff determined,

6. That allocation of burden of proof reflects the ADA's basic incorporation of the burden-shifting analysis framed by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), requiring a plaintiff to establish a *prima facie* case of discrimination. *See McBride,* 583 F.3d at 96.

Hunt offered no evidence that she had ever sought to shift the subject of accommodation to a possible transfer to a job other than as correctional officer or at another location in the DOC organization, such as at headquarters.[7] Hunt replies on appeal only that an employee has no "affirmative duty ... to identify possible positions" during the interactive process, Br. for Appellant at 12; but this misses the point, which is that she gave *no* indication to DOC of an interest in transfer to a non-correctional officer position or to a location other than at the Jail. An interactive dialogue with the employee focuses on her qualification for the position "such individual holds or desires." *Aka,* 332 U.S.App. D.C. at 273, 156 F.3d at 1301 (emphasis omitted). An uncommunicated desire for transfer is effectively none at all.

Moreover, when we move to considering the job openings Hunt identified after her suit was filed, and to which she allegedly could have been transferred at the time, her case fares no better. Even if Hunt did not bear the burden of proof on that issue,[8] examination of those job descriptions—for positions such as "management liaison specialist," "criminal investigator," and "lead legal instruments examiner"—affords no basis for inferring that Hunt met the qual-

ifications for any of them. Because she proffered no other evidence in that regard, a jury would have had to speculate to decide that she could perform the essential functions of the jobs.

## IV.

 Hunt's challenge to summary judgment on her remaining claims—intentional interference with contractual relations and intentional infliction of emotional distress—may be dealt with briefly. As to the first, she alleged that DOC had interfered with her rights under the Collective Bargaining Agreement between the Union of which she was a member and the District government. But "the tort of interference with contractual relations does not lie when the defendant itself is a party to the contract." *Farmland Indus., Inc. v. Grain Bd. of Iraq,* 284 U.S.App.D.C. 276, 282, 904 F.2d 732, 738 (1990) (citing, *inter alia,* W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 129 at 990 (5th ed. 1984)). Thus, the District's alleged actions through DOC "may or may not [have] rise[n] to the level of a breach of contract, but ... [could] not support an action for interference with it." *Donohoe v. Watt,*

---

7. The judge correctly explained that

there is nothing in the record [indicating] that the plaintiff ever requested such an accommodation at any time. It was not the subject of any discussions she had with DOC representatives while she was on paid administrative leave, nor did she make any such request when the paid administrative leave ended in November 2006. The letter from the psychiatrist in July 2008 was a report on her inability to work in a correctional facility, but at most it stated that there was a "possibility" that she could be employed in another field with proper training. That letter cannot fairly be construed as a request for a reasonable accommodation from DOC.

8. *But see Jackan v. New York State Dep't of Labor,* 205 F.3d 562, 568 n. 4 (2d Cir.2000) ("Jackan suggests that placing the burden on the plaintiff to prove the existence of a vacancy is unfair, given the employer's greater access to this information. This concern is overstated. Once the litigation has begun, the plaintiff can utilize the liberal discovery procedures of the Federal Rules of Civil Procedure, including interrogatories, depositions, and document demands, to identify vacancies that existed at the pertinent time."); *Donahue,* 224 F.3d at 234 (summary judgment must be granted to defendant "if, after a full opportunity for discovery, the ... record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred").

546 F.Supp. 753, 757 (D.D.C.1982), *aff'd,* 230 U.S.App.D.C. 70, 713 F.2d 864 (1983).[9]

■ The additional cause of action, for intentional infliction of emotional distress, likewise failed as a matter of law. "We have been exacting as to the proof required to sustain such claims in an employment context." *Futrell v. Dep't of Labor Fed. Credit Union,* 816 A.2d 793, 808 (D.C. 2003) (internal quotation marks omitted). "The conduct alleged must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotation marks omitted). As Judge Bartnoff explained:

> [Hunt] alleges that [Deputy Director] Britton repeatedly told her that she "did not fit the mold of a corrections officer" and ... should resign.... Although [Britton's] comments ... may have been difficult for [Hunt] to accept and may have been perceived as harsh or unkind, [Hunt] hardly can claim that those comments were outrageous or intolerable. To the contrary, [Hunt] had shown herself unable to perform essential functions of the job, even when she was placed in [a] post where she did not have direct contact with inmates, and her psychiatrist eventually advised DOC that she was unable to work in the environment of a jail and likely never would be able to work in a correctional environment. [Hunt] cannot make the showing required to establish intentional infliction of emotional distress, when her complaint is that the defendants did not

assign her to a position she had shown herself to be unable to perform and her supervisor then stated that she was unable to do the job she admittedly was unable to do.[10]

*Affirmed.*

9. Nor does Hunt demonstrate error in Judge Bartnoff's conclusion that her claim that DOC "disregarded the procedures that must be followed" under the labor agreement, Compl. ¶ 35, was barred by the Comprehensive Merit Personnel Act (CMPA), D.C.Code § 1–601 *et seq.* (2001), requiring that District employee claims of wrongful personnel action be adjudicated first by the Public Employee Relations Board. *See Cooper v. AFSCME, Local 1033,* 656 A.2d 1141, 1142 n. 1 (D.C.1995). Hunt's

argument that her claim was not just a "personnel" grievance but one of disability-based discrimination under the DCHRA adds nothing, given our rejection of that claim as a matter of law.

10. We therefore do not reach the District's point that this claim, too, based as it was on conduct underlying an employment dispute, was subject to CMPA preemption.