*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-798

VICTORIA JOHNSON, APPELLANT,

V.

WASHINGTON GAS LIGHT COMPANY, *ET AL.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(10-CAB-3199)

(Hon. Laura A. Cordero, Trial Judge)

(Submitted: October 1, 2014            Decided: February 12, 2015)

*Craig D. Miller* for appellant.

*Christopher R. Costabile* for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

GLICKMAN, *Associate Judge*: This is an appeal from an award of summary judgment to the defendant in a personal injury action. When another motorist allegedly swerved to avoid an open utility hole in the middle of the road, she collided with appellant Victoria Johnson's car, causing a serious accident in which Johnson was injured. Johnson sued Washington Gas Light Company (hereinafter,

"Washington Gas"), alleging that the accident was caused by its negligent failure to replace the cover on the utility hole during recent maintenance. The Superior Court granted summary judgment to Washington Gas on the ground that Johnson had not put forth sufficient evidence to permit a jury reasonably to infer that Washington Gas was at fault. We disagree and reverse.

## I.

We review a grant of summary judgment *de novo*, applying the same standard as the trial court.[1] Under that standard, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] "Once the movant has made a sufficient evidentiary showing to support the motion, the opposing party's response 'must set forth specific facts showing that there is a genuine issue for trial.'"[3] The movant is entitled to summary judgment if the opposing party fails to make a sufficient showing on an essential element of her

---

[1] *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583 (D.C. 2001).

[2] *Id.* (citing Super. Ct. Civ. R. 56 (c)).

[3] *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1037 (D.C. 2014) (quoting Super. Ct. Civ. R. 56 (e)).

claim with respect to which she has the burden of proof.[4] However, in assessing whether there exists a genuine issue of material fact, the pleadings and probative evidentiary materials submitted on the motion must be viewed in the light most favorable to the non-moving party;[5] and so, on appeal, we will affirm an award of summary judgment "only if there is no genuine issue of material fact remaining after taking all inferences in favor of the non-moving party."[6] Thus, in a simple negligence case such as this one, summary judgment based on the perceived insufficiency of the plaintiff's proof of a material fact cannot stand if the proof is such that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[7]

## II.

Viewing the evidence presented to the trial court in the light most favorable to appellant, the pertinent facts are as follows: On July 17, 2007, Victoria Johnson was driving in the right lane on Alabama Avenue, S.E., when a car in the left lane,

---

[4] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[5] *Grant,* 786 A.2d at 583.

[6] *Night & Day Mgmt.*, 101 A.3d at 1037.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

swerving to avoid an uncovered utility test station hole, struck her vehicle and pushed it into a utility pole. Johnson sustained a compound fracture of her leg and other bodily injuries.

A test station hole is similar to, but somewhat smaller than, a typical manhole. The one in this case was located in the middle of the road on Alabama Avenue near its intersection with 23rd Street, S.E. Johnson testified in her deposition that she had driven by it "at least twice a day" in the months preceding the accident, and she had seen what she described as "construction" and an uncovered test station hole in a rectangular depression at the test station site "at least a week" before the accident occurred. While the road work was in progress, the site was surrounded by cones and a barricade that effectively closed off the far-left lane and directed traffic into the rightmost lane. The work on the test station was no longer being performed at the time of the accident (and the cones and barricade were no longer present then), but Johnson recalled that the test station hole still was uncovered. She recalled being careful to drive around the spot so as not to get a flat tire or break an axle, as she had seen happen there to another, less cautious driver.

The test station was owned and maintained by Washington Gas. There is no evidence that Washington Gas was notified prior to the accident that the test station cover was missing.[8] Washington Gas confirmed, though, that its employees had worked on the test station on June 18 and 20, 2007, a month before the accident. In the course of their work, the Washington Gas crew cut a four foot by five foot hole in the pavement surrounding the test station, removed the test station cover and the cover's mounting ring, performed some repairs, replaced the ring, and filled in the hole with bluestone (a gravel compound) and temporary asphalt.[9] This, evidently, was the construction work that Johnson remembered.

At issue in this case is whether the workers replaced the cover or left the test station hole uncovered.[10] There is no testimony or documentation in the record directly answering this question. But neither is there any evidence that anyone else

---

[8] Johnson testified that she did not notify Washington Gas or the District government of the missing test station hole cover.

[9] The temporary backfill was replaced with permanent asphalt on July 20, 2007, three days after Johnson's accident.

[10] If Washington Gas's employees left the hole uncovered, that could have been a breach of a common law duty the company owed to the public to maintain the test station area in a reasonably safe condition. *See District of Columbia v. Texaco, Inc.*, 324 A.2d 690, 691 (D.C. 1974); *see also Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 424-25 (D.C. 2000); *Sherman v. District of Columbia*, 653 A.2d 866, 869-70 (D.C. 1995).

removed the cover from the test station. Ronald King, Washington Gas's corporate designee, testified in his deposition that a test station cover is "extremely heavy" and is designed and fitted into its ring "so people can't remove it."[11]

In awarding summary judgment to Washington Gas, the trial court ruled that Johnson had not presented sufficient evidence for a jury to find that Washington Gas was on notice before the accident that the test station cover was missing.[12] The court recognized that notice would not have to be shown if Washington Gas itself created the hazard through the failure of its employees or agents to replace

---

[11] The exact dimensions and weight of the cover for the test station are not disclosed in the record before us. Washington Gas argues that King's testimony is ambiguous and that he might have been describing the cover's mounting ring rather than the cover itself. We disagree; King testified that "both of these are extremely heavy."

[12] *See District of Columbia v. Freeman*, 477 A.2d 713, 718 (D.C. 1984) (stating that in a negligence action for injuries due to the defendant's maintenance of an unreasonably dangerous condition, the defendant's "notice of the asserted dangerous condition, prior to injury, is a fact which must be established"). *See also Marinopoliski v. Irish*, 445 A.2d 339, 340-41 (D.C. 1982) (explaining that notice may be either "actual or constructive," and that "[i]n order to support a finding of constructive notice of a hazard, the cause of the injury must be foreseeable . . . and the cause must have been present in the area where the injury occurred for a sufficient length of time that the property owner should have known about it" (internal citation omitted)).

the cover after they removed it.[13]  However, the court concluded, Johnson's proof

that Washington Gas caused the dangerous condition was insufficient because, as

in *District of Columbia v. Smith*,[14] the evidence here did not exclude the possibility

that someone else removed the cover in the four-week period between the

maintenance work at the test station and the accident.  "[T]here is no evidence,"

the court pointed out, "that members of the public could not remove the test station

cover, merely [Ronald King's testimony] that it may be difficult to do so;" and

there was "ample time" after the maintenance work was performed "for someone

or something to cause the removal of the test station cover."

The plaintiff in *Smith* injured herself when she fell after stepping on a loose

water meter cover in front of her home.  She sued the District for negligence,

alleging that District employees had created the dangerous condition by failing to

secure the water meter cover properly when they worked on the meter three days

before the accident.  At trial, the plaintiff presented no direct evidence that the

---

[13] *See Sherman*, 653 A.2d at 870 ("Proof that the District had notice of the defective condition [an unsecured water meter cover] is irrelevant here, where liability is premised on the primary negligence of the District's agent" in creating the unsafe condition) (citing *Harding v. City of Highland Park*, 591 N.E.2d 952, 959 (Ill. App. 1992)).

[14] 642 A.2d 140 (D.C. 1994).

employees replaced the water meter cover improperly, while the District presented testimony that the covers were small and lightweight, "could be easily removed without special tools," and, in fact, "had been removed in the past by members of the public."[15] Considering this evidence on appeal, we held that "because of the absence of direct evidence of negligence and because of the lapse of time, the jury could not reasonably infer that District employees had negligently replaced the water meter cover."[16] The time lapse, we explained, "left 'too great an opportunity' for an 'independent and intervening culpable act for the law to pin liability' on the District for [the plaintiff's] unfortunate accident."[17]

The four-week period between the maintenance and accident in the instant case is quite a bit longer than the three days in *Smith*, providing considerably more time for a hypothetical member of the public to tamper with and remove the test station cover. Even so, we think *Smith* is distinguishable from the present case, and that the evidence presented to the trial court, viewed in the light most favorable

---

[15] *Id.* at 142.

[16] *Id.* at 143. "A better case supporting an inference of negligence could [have been] made," we observed, "if the water meter cover could only be removed by using a tool not available to members of the public." *Id.* at 143 n.3.

[17] *Id.* at 143-44 (quoting *Morrow v. City of Harlan*, 344 S.W.2d 401, 403 (Ky. 1961)).

to Johnson, was sufficient to permit a jury to find it more likely than not that the cover was removed and not replaced by Washington Gas's employees.

To begin with, the negligence alleged in this case differs from that in *Smith*: The question here is whether the defendant removed the cover and did not replace it at all, not merely whether, as in *Smith*, the defendant replaced it incorrectly. This distinction makes a difference because, unlike in *Smith*, there actually is some evidence in this case of the alleged primary negligence of the defendant in creating the hazardous condition in addition to the existence of that condition at the time of the accident. Specifically, Washington Gas acknowledges that its employees did remove the test station cover, and Johnson's testimony—that she drove by the test station site twice a day and recalled seeing *both* the "construction" at the site and the uncovered hole there "at least a week" before the accident—is evidence that she saw the cover was missing from the time the maintenance work was performed, implying that Washington Gas's employees did fail to replace it.[18] Although the maintenance actually was performed a month rather than a week

---

[18] *See Sherman*, 653 A.2d at 870 (When the record is unclear as to whether the District's agent properly replaced a meter cover, "it creates a question over which reasonable men and women could differ, and thus, whether [the agent] created the hazard is an issue that should be resolved by the fact-finder.").

before the accident, a jury reasonably could deem it unimportant that Johnson does not remember exactly how much time elapsed.

In addition, there is no evidence in this case, as there was in *Smith*, that the missing cover easily could have been removed by someone else. On the contrary, according to Washington Gas's designated representative, test station covers are "extremely heavy" and difficult for members of the public to move.[19] There is no evidence that test station covers have been subject to tampering and unauthorized removal by members of the public in the past. Anyone interested in stealing the test station cover in this case surely would have been discouraged from doing so by its inconvenient location in plain view in the middle of Alabama Avenue. And even if someone not employed by Washington Gas *could* have run out into the middle of the road at a time when traffic was light and witnesses were not around, and *could* have extracted the cumbersome metal cover out of its hole and hauled it away, it is a puzzle why anyone would have wanted to do so. In short, a jury reasonably could conclude that tampering by an unauthorized member of the public is not a plausible alternative hypothesis to explain the absence of the test station cover in this case.

---

[19] It is unclear from the record whether a special tool is required to remove the test station cover or if it is secured solely by its weight.

For these reasons, we think a reasonable jury, presented with the evidence adduced on the motion for summary judgment, fairly could find it more likely than not that Washington Gas employees failed to replace the test station cover at the intersection of Alabama Avenue and 23rd Street after they removed it in June 2007. We therefore reverse the award of summary judgment to Washington Gas and remand for further proceedings consistent with this opinion.

*So ordered.*