Karen V. HILL, Appellant,

v.

METROPOLITAN AFRICAN METH-ODIST EPISCOPAL CHURCH, et al., Appellees.

No. 00–CV–204.

District of Columbia Court of Appeals.

Argued April 5, 2001.

Decided Aug. 30, 2001.

Vere O. Plummer, for appellant.

Deborah E. Kane, Greenbelt, MD, for appellee *Metropolitan African Methodist Episcopal Church.*

George W. Jones, Jr., Washington, DC, for appellee *National Association for the Advancement of Colored People.*

Before STEADMAN and FARRELL, Associate Judges, and KING, Senior Judge.

STEADMAN, Associate Judge:

Appellant was injured when she fell on a stairway while leaving the inauguration ceremony for the new chair of the National Association for the Advancement of Colored People ("NAACP"), held at the Metropolitan African Methodist Episcopal Church ("the Church"). The trial court granted summary judgment for both the NAACP and the Church on appellant's negligence claims when appellant failed to designate any expert to testify on the standard of care for crowd control. We affirm.

**A.**

The basic facts for purposes of summary judgment on the issue before us were not in dispute. Plaintiff was seated in a side pew toward the back of the main sanctuary of the church. When the inauguration ceremony ended, in appellant's own words, the following occurred:

> Someone in clerical garb made that general announcement, asked that the people—that there be an overall orderly departure ... and that everybody allow people in the center to leave first, and then everybody from the main sanctuary to leave, and then people from the balcony to leave.

In conformity with this announcement, appellant describes the egress as: "all the rows ahead [of us] ... had departed prior [to us], and [then] the row immediately in front of where I was sitting ... had departed. And then the row that I was in, those people walked out into the aisle." Appellant then proceeded to the landing outside the sanctuary to exit via a stairway. Suddenly there was a "rush" of people, perhaps from the balcony. In the pushing and shoving crowd, appellant could not see when she reached the top of the stairway and she fell down.

Appellant's theory of liability, briefly put, was that no ushers were in charge of crowd control for the departure process and that no expert testimony was needed on the subject. The trial court encapsulat-

ed its contrary reasoning as follows: "The court finds plaintiff's assertion that '[t]he issue of providing ushers for church services where attendance is approximately seventeen hundred to two thousand persons is within the common knowledge and experience of the reasonable juror' to be erroneous.... [T]he court remains firm in its belief that the duty to provide crowd control in a church setting is sufficiently unique such that the law requires some sort of expert testimony in order to establish a basic standard of care that defendants could have breached."

██ In reviewing a grant of summary judgment, this court conducts an independent, *de novo* review of the record in a light most favorable to the opposing party. *Klock v. Miller & Long Co.*, 763 A.2d 1147, 1149 (D.C.2000). We affirm the grant of summary judgment "only [if] there are no genuine issues of material fact and [if] the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56. The outcome of our review is in accord with the trial court.

## B.

██ "The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255 (D.C.1991). With respect to the first requirement, as we recently had occasion to reaffirm, "[a] plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be

beyond the ken of the average layperson." *District of Columbia v. Arnold & Porter,* 756 A.2d 427, 433 (D.C.2000) (citations omitted). Conversely, no expert testimony is needed if the subject matter is "within the realm of common knowledge and everyday experience." *Id.*[1]

A particularly relevant case in illustrating the need of expert testimony in a factual context of everyday experience is *District of Columbia v. Freeman,* 477 A.2d 713 (D.C.1984). A car struck a six-year-old child at an intersection. The plaintiff attempted to establish that the District was negligent in failing to provide sufficient pedestrian protection at that intersection. The plaintiff placed into evidence aerial photographs, diagrams, and dimensions of the intersection, as well as the testimony of four lay witnesses that the intersection was dangerous despite the presence of a crosswalk (itself a traffic control device), and that some form of stop sign or light was needed. Notwithstanding all this evidence, we ruled that the trial court erred in holding that no expert testimony was required:

[W]e are persuaded that, whether a painted crosswalk is sufficient to render a particular intersection reasonably safe is a determination essentially technical in nature, based upon an expert evaluation of vehicular and pedestrian traffic patterns, design feasibility, cost effectiveness, and related variables.... [T]he fatal flaw in appellee's presentation was the lack of expert testimony from traffic engineers, designers, or highway safety experts, placing the evidence in an appropriate context for the jury.... The layman, although he may cross the

---

1. In *District of Columbia v. Hampton,* 666 A.2d 30, 35–36 (D.C.1995), we referred to the "general rule requiring expert testimony to prove the applicable standard of care," noting that "over the last decade or so ... the re- quirement has been applied more broadly to a variety of situations" with numerous examples, and noting also "the substantially smaller number of cases falling within the common knowledge exception."

street regularly, does not possess the technical knowledge needed to judge the city's decision to install a crosswalk, instead of a stop sign, light, or crossing guard, at a particular intersection.

*Id.* at 719–20 (footnote omitted).

We applied that principle in another similar situation where the setting, a children's playground, was one familiar to all but expert testimony was nonetheless required. A child swinging on monkey bars lost her grip and fell to the ground, fracturing her arm. The theory of liability was that the District was negligent in failing to make the ground safe beneath the monkey bars. We held that expert testimony was required as to the recognized standard of care for such cushioning and that even an expert's own opinion as to what he would do in that regard was insufficient. "In sum, we hold that [the expert's] testimony failed to establish the standard of care against which an impartial trier of fact could reasonably assess the District's actions in this case. Without sufficient proof of the standard of care, the trial judge did not err in not sending the case to the jury." *Messina v. District of Columbia,* 663 A.2d 535, 540 (D.C.1995). (internal quotation marks omitted)

More recently, where a tree growing on a sidewalk fell on appellant's house, we held that expert testimony was required, stating that "an average lay person is not capable of discerning when a leaning tree may create a dangerous situation requiring an emergency response and whether the likelihood of the tree falling is related to the condition of the tree, the street, or other circumstances." *Katkish v. District of Columbia,* 763 A.2d 703, 706 (D.C.2000). We have also required expert testimony on the issue of the reasonableness of the length of delay on a construction project, stating that it was not a question answerable by a lay jury based on everyday experience. "The answer to that question . . .

depended on resolving subsidiary issues of fact that lay jurors could not reasonably answer on the basis of everyday experience." *Lenkin–N Limited Partnership v. Nace,* 568 A.2d 474, 478 (D.C.1990).

By contrast, we have held that expert testimony was not required to show negligence where open holes in the metal tubing construction of a playground slide caused injury to a child who put her thumb in the hole. We held that the question was properly submitted to the jury, rejecting the notion that "without . . . expert assistance, [the jury] could apply the general duty of reasonable care by finding that a public housing playground supervisor could reasonably have been expected to recognize that the holes created a dangerous condition." *District of Columbia v. Shannon,* 696 A.2d 1359, 1365 (D.C.1997). In other words, both the danger (the attraction of the holes to children) and the means of preventing injury (plugging the holes as recommended by the manufacturer) were obvious. Also instructive is *Jimenez v. Hawk,* 683 A.2d 457 (D.C.1996), in which a property owner failed to cap or seal a tank containing flammable materials, thereby allowing the fumes to be exposed to appellant's welding business. We required no expert testimony on the question of negligence, stating:

The jury in the instant case surely could use its common sense and everyday experience to infer reasonably from the evidence that an abandoned tank neither removed from nor secured in the ground as required by the D.C. Fire Code, in which used motor oil had been stored over the years, constituted negligence; and that when pipes leading into the tanks were wholly or partially exposed to the work area where appellant was welding . . . the resultant sparks consti-

tuted a fire hazard for a person working there.

*Id.* at 462.

## C.

■ We turn to the case now before us. As she did before the trial court, appellant asserts to us that the "issue of providing ushers for church services where attendance is in excess of fifteen hundred people is within the common knowledge and experience of the reasonable juror."[2] But this, so it seems to us, misstates the issue. No doubt attendance at large gatherings of many types—religious services, graduation ceremonies, sporting events, theatrical performances, and so on—and the process of entering and exiting from the relevant locales are events within common knowledge and experience. But that is a far cry from any experience with the process of planning for the handling of large crowds in such circumstances, both architecturally and through various crowd control measures. Without the expert testimony of one familiar with such considerations, the jury would be left to sheer speculation as to various types of crowd control, what level of measures is generally accepted as reasonable in such circumstances, and the relation of such measures to possible mishaps in the exiting process. As the NAACP aptly puts it in their brief:

> In this case, without expert testimony, there is no way for a jury to evaluate Ms. Hill's assertions as to what should have been done or whether that action would have avoided her injury. Certainly, the average layperson would have no experience in deciding whether and what

'crowd control' mechanisms would be appropriate for an investiture ceremony for 1700–2000 people in a church configured like Metropolitan AME.

Indeed, we might add, for all that can be discerned from the present record, even the row-by-row departure requested by the person in clerical garb in this case may itself have been more than might be normally expected as a standard of care.

In *Freeman, supra,* 477 A.2d at 719, we observed that "[t]he jury may evaluate the facts without expert assistance only if the ultimate issue is within the realm of common knowledge and everyday experience." *Id.* (citation and internal quotations omitted). There, as in the case now before us, the "ultimate issue" was not within that realm. The standard of care for crowd control in exiting large gatherings is indeed in our judgment, like that of the trial court, "beyond the ken of the average layperson." *Arnold & Porter,* 756 A.2d at 433. Because appellant did not designate an expert to testify, the trial court properly entered summary judgment in favor of the appellees.

*Affirmed.*

---

2. Appellant suggests that the deposition testimony of the church pastor about their use of ushers in directing worshippers in and out of the church, could provide the requisite proof. That brief testimony in the record before us is at best at a high level of generality in relation to this mishap, and what the church might choose to do in providing usher services to its congregation as part of its religious events could not be determinative on what a general standard of crowd control might require. *Cf., e.g., Phillips v. District of Columbia,* 714 A.2d 768, 773 n. 3 (D.C.1998) (internal directive of Department of Corrections insufficient to establish standard of care).