Tanya L. ODEMNS, Appellant,

v.

DISTRICT OF COLUMBIA and The
District of Columbia Water and
Sewer Authority, Appellees.

No. 02–CV–354.

District of Columbia Court of Appeals.

Submitted Oct. 23, 2003.

Decided July 12, 2007.

Sidney Schupak, was on the brief, Washington, D.C., for appellant.

Arabella W. Teal, Interim Corporation Counsel at the time the brief was filed,

Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, and Donna M. Murasky, Senior Litigation Counsel, were on the brief for the District of Columbia.[*]

Thomas D. Bridenbaugh, Nat. N. Polito, Nicole C. Mason, Henderson J. Brown, IV, General Counsel and Wendy Hartmann, Principal Counsel, were on the brief, Washington, D.C., for the District of Columbia Water and Sewer Authority.

Before FARRELL, Associate Judge, and WAGNER,[**] and KING, Senior Judges.

PER CURIAM:

Appellant, Tanya L. Odemns, appeals from an order of the trial court granting summary judgment to appellees, the District of Columbia (District) and District of Columbia Water and Sewer Authority (WASA), on her complaint for negligence against appellees. In granting the motion, the trial court concluded that neither the District nor WASA had a duty to Odemns for the condition of a manhole cover on privately owned property which she alleged caused her to fall and sustain injuries. On appeal, appellant argues that the trial court erred in its ruling because: (1) WASA has a duty to inspect and provide notice of any dangerous conditions under applicable regulations, the foreseeability of harm test and public policy considerations; and (2) WASA is not shielded from liability by the public duty doctrine. We affirm.[1]

## I.

Appellant filed a complaint against the District and WASA alleging that she sustained injuries when she stepped on a defective water meter manhole cover at her apartment complex on Savannah Terrace, S.E.[2] It is undisputed that the manhole cover was privately owned; however, appellant claimed that WASA had a duty to inspect the manhole cover and to alert the property owner to any dangerous condition so that it could be remedied.[3] Appellant claimed that as a result of WASA's breach of that duty, she was injured when she fell into the manhole.

Before trial, WASA filed a motion requesting the trial court to hold as a matter of law that it had no duty to appellant to maintain, inspect, or correct the water meter or its cover which allegedly caused appellant's injuries. Appellant filed an opposition, and WASA filed a reply. With the consent of the parties, the court treated the motion as one for summary judgment. Concluding that neither the District nor WASA had a duty to inspect, repair and maintain the meter covers at appellant's apartment complex and that it owed her no special duty, the trial court granted the motion.

## II.

Appellant argues that the applicable regulations imposed a duty upon WASA to

---

[*] On May 26, 2004, the Office of the Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C.Reg. 6052 (2004).

[**] At the time of submission, Judge Wagner was Chief Judge of the court.

1. The District filed a brief stating first that appellant implicitly conceded the trial court's dismissal of the case against it. Since appellant has made no argument challenging on appeal the trial court's dismissal of her claim against the District, we agree that she has implicitly conceded any appeal issue with respect to the District, and therefore, affirm summarily as to the District.

2. The lid covered a manhole that enclosed or contained a water meter.

3. Appellant did not sue the property owner.

inspect the manhole cover and to take reasonable action to ensure that the dangerous condition was remedied. It contends that these regulations limit the duty of the property owner to bearing the cost for the installation and maintenance of water meters and their appurtenances. WASA argues in response that the responsibility for maintaining commercially owned water meters and any appurtenances thereto is placed by statute and implementing regulations upon the property owner. The disposition of the issue presented turns on the interpretation of a statute and its implementing regulations concerning the inspection, maintenance and repair of privately owned water meters and appurtenances.

### A. *Applicable Legal Principles*

■ This court reviews questions of statutory interpretation *de novo. Porter v. United States,* 769 A.2d 143, 148 (D.C. 2001) (citing *District of Columbia v. Jerry M.,* 717 A.2d 866, 868 (D.C.1998)). " 'The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used.' " *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc) (quoting *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc) quoting in turn *United States v. Goldenberg,* 168 U.S. 95,

102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). The words of a statute or regulation "should be construed according to their ordinary sense, and with the meaning commonly attributed to them." *Porter,* 769 A.2d at 148 (quoting *Demus v. United States,* 710 A.2d 858, 861 (D.C.1998)) (internal quotation marks omitted). Applying these general principles and others mentioned hereinafter, we address the issues raised by the parties.

### B. *Analysis*

Appellant concedes that financial responsibility for erecting and maintaining water meters and their appurtenances for commercial property is on the property owner. She argues, however, that municipal regulations place upon WASA the exclusive duty of inspecting water meters and the manholes in which they are located and that the regulations and policy considerations require WASA to take action to remedy any dangerous condition. In support of her argument, she first cites 21 DCMR §§ 300.2, 302.5, and 305.1, which she contends show that the property owner's duty is limited to bearing costs, and 21 DCMR § 305.5, which she contends imposes the inspection duty on only WASA. WASA contends that 21 DCMR §§ 302.5 and 305.1 demonstrate that it is the customer that has a duty to maintain the water meter and its appurtenances.[4]

---

**4.** The sections of the regulations relied upon by appellant and WASA, at the time relevant hereto, provided as follows:

300.2 Privately owned water meters are those required to be installed and maintained at the expense of the consumer; and are defined, in general, as meters on water services which supply premises utilized for business purposes, and commercial and industrial purposes which require large quantities of water.

302.5 The necessary meters and appurtenances shall be provided, erected, and maintained by the consumer at the consumer's expense.

305.1 Consumers are required to keep their meters and appurtenances in repair and to protect them against frost and injury of any kind at their own expense.

305.5 Each water meter shall be inspected periodically by representatives of the Department. Inspection shall be conducted in accordance with the American Water Works Association schedule.

21 DCMR §§ 300.2, 302.5, 305.1 and 305.5. The regulations related to commercially owned water meters were amended in 2003. *See* 21 DCMR §§ 300 *et seq.* (2003).

Contrary to appellant's position, a plain reading of sections 300.2, 302.5 and 305.1 does not suggest that the owner's responsibility is limited to bearing the costs of installation and maintenance of water meters and their appurtenances. While the financial responsibilities of the property owners are spelled out in these sections, their responsibility for "provid[ing], erect[ing], and maintain[ing] the meters and appurtenances," 21 DCMR § 302.5, and for "keep[ing] their meters in repair and ... protect[ing] them against frost and injury of any kind," is also made clear. 21 DCMR § 305.1. According the words used their ordinary meaning, the referenced sections impose upon the private, commercial property owners the responsibility for keeping the meters and the area or parts around them in good repair, or if damaged, restoring the meter and appurtenances to sound condition.[5]

Appellant argues that the exclusion of any inspection requirements for property owners in the sections delineating their responsibilities and the inclusion of an inspection requirement for WASA in § 305.5 show that the legislature intended to place an inspection burden solely on WASA. She contends that if the drafters had intended to require private property owners to inspect their property, rather than merely to bear the costs of repair and maintenance, they would have included the word "inspection" in 21 DCMR §§ 300.2, 302.5 and 305.1, and D.C.Code § 34–2403.03.[6] She relies upon a rule of statutory construction known as *"expressio unius est exclusio alterius,"* that means essentially that "when the legislature makes express reference to one thing, the exclusion of others is implied." *Council of the District of Columbia v. Clay,* 683 A.2d 1385, 1390 (D.C. 1996) (quoting *McCray v. McGee,* 504 A.2d 1128, 1130 (D.C.1986)); *see also Independent Bankers Ass'n v. Farm Credit Admin.,* 334 U.S.App.D.C. 82, 88, 164 F.3d 661, 667 (1999) (noting that it is presumed that the legislature acted purposely when it includes specific language from one portion of a statute and excludes it from another). The inspection requirement listed in § 305.2, which appellant cites, addresses only WASA's responsibility to inspect the meter itself periodically. That section does not suggest that WASA's responsibility to inspect the meters includes conducting safety inspections of manhole covers or the area surrounding them on private commercial property. As WASA points out, unlike the sections conferring maintenance responsibilities for meters and appurtenances upon property owners, § 305.2 provides only for WASA to inspect the meters periodically. If the legislature intended these periodic inspections to cover something other than the meter, it would have so stated.[7] *See Clay,* 683 A.2d at 1390.

---

5. We construe the words used in the regulation according to the meaning commonly attributed to them. *See Porter, supra,* 769 A.2d at 148. The word "maintain" means "[t]o keep in a condition of good repair or efficiency." The American Heritage Dictionary of the English Language (3d ed.1992). The word "repair" ordinarily means "[t]o restore to sound condition after damage or injury." *Id.* "Appurtenance" is defined as "[s]omething added to another, more important thing; an appendage." *Id.*

6. D.C.Code § 34–2403.03 states in pertinent part as follows:

(a) The supply of water to all ... commercial buildings, shall be determined by meters erected and maintained at the expense of the consumer.

7. Appellant contends that 21 DCMR § 305.5 could not have been intended to provide for WASA's inspection of the meters only for the purpose of assuring that the meter is working properly and that the reading is correct, as WASA urges, because another section, 21 DCMR § 309, addresses meter reading and billing. Appellant contends that such an interpretation would render § 309 superfluous. *See District of Columbia v. Morrissey,* 668

■ Appellant argues that since the regulatory scheme gives total control over water meters and their appurtenances to WASA, it is more logical to interpret the inspection requirement of § 305.5 to include inspections of the appurtenances surrounding the meter, than to conclude that the property owner has any responsibility for inspecting or noticing any defective conditions. In support of this argument, appellant cites 21 DCMR §§ 302.6 (requiring meters to be installed under the supervision of the Director of WASA), 303.1 (requiring the meters to be of a make that has been approved by the Director), 305.3 (requiring a permit from WASA for removal or repair of meters or appurtenances) and 305.12 (providing that the Department may require the property owner to purchase a replacement meter if it determines the meter to be obsolete or irreparable). While these provisions require the property owner to obtain a permit to remove a meter or make repairs and WASA supervision for the installation of meters, that does not eliminate the independent force of § 305.1 which provides that "[c]onsumers are required to keep their meters and appurtenances in repair and to protect them against frost and injury of any kind at their own expense," and § 302.5, which provides that "[t]he necessary meters and appurtenances shall be provided, erected, and maintained by the consumer at the consumer's expense."

■■ Moreover, the exclusion of the word, "inspect," from the regulations governing the property owners' responsibilities cannot reasonably be read to exempt them from the duty to keep themselves informed of any dangerous conditions of a manhole cover on their private property, given the maintenance and safety responsibilities that the regulations affirmatively impose upon them. Necessarily implicit in their obligations to repair, maintain and protect meters and their appurtenances is a responsibility to take notice of any dangerous conditions in order to remedy them. Under these circumstances, we cannot presume that the omission of the word "inspection" from the provisions specifying the owners' responsibilities was intended to relieve property owners of taking the steps necessary to discharge such responsibilities. We have said that "[t]he *expressio unius* maxim ... must be applied with a considerable measure of caution." *Clay, supra,* 683 A.2d at 1390 (citation omitted). This aid to statutory or regulatory construction "must ... be subordinated to 'clear and contrary evidence of [legislative] intent.'" *Id.* (quoting *Neuberger v. Commissioner of Internal Revenue,* 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940)). Given the unambiguous mandate upon the property owners to maintain and repair the meters and appurtenances at their own expense, it is unreasonable to infer that the statutory and regulatory drafters intended to relieve them of the obligation to notice dangerous conditions of manhole covers on their private property or to exempt them from their customary responsibility of exercising ordinary care to keep their property free from dangerous conditions.[8] For all of the foregoing

A.2d 792, 798 (D.C.1995) (applying the principle that "each provision of a statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous") (quoting *Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037 (D.C.1988)). Contrary to appellant's argument, we find nothing in these sections that would render the other superfluous or meaningless.

8. Indeed, property owners cannot ignore dangerous conditions of manhole covers on their private property for another reason. Landowners have a duty to persons lawfully upon their premises, after notice of a dangerous condition (actual or constructive), to exercise

reasons, we find no error in the trial court's determination that the regulations imposed a responsibility upon commercial private property owners for maintaining and keeping the appurtenances to their water meters repaired and in a safe condition and that WASA owed no duty to appellant for a manhole cover that was not properly maintained by the property owner.[9]

Generally, to establish negligence, a plaintiff must prove "a duty of care, breach of that duty, and injury proximately caused by that breach." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C.1997) (citations omitted). Therefore, the alleged tortfeasor must owe plaintiff some duty of care. *Id.* (citations omitted). That duty may derive from statute or regulations. *Jarrett, supra* note 9, 751 A.2d at 980. Appellant argues that, separate and apart from the applicable statute and regulations, the court may recognize a duty on the part of WASA based upon policy considerations and the "forseeability of harm" test.

> In determining the existence of a duty owed to a plaintiff, [courts] have applied a "foreseeability of harm" test, which is based on the recognition that duty must be limited to avoid liability for unreason-

ably remote consequences.... Inherent also in the concept of duty is the relationship between the parties out of which the duty arises.... [U]ltimately, the determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interest[s] are, or are not, entitled to legal protection against the conduct of the defendant.

*W.C. & A.N. Miller Co. v. United States*, 963 F.Supp. 1231, 1243 (D.D.C.1997) (quoting *Rosenblatt v. Exxon*, 335 Md. 58, 642 A.2d 180, 189 (1994)). In *Miller*, applying the foreseeability of harm test, the court held the United States had a duty to warn subsequent occupants of land on which it had buried hazardous live munitions and that it could be held liable for a breach of that duty. *Id.* at 1243–44. The court was persuaded that the U.S. Army, which had created the hazard and essentially "covered it up," was in the best position to warn future occupants under the circumstances, particularly given that there was no basis for concluding that anyone else knew or could have discovered the danger. *Id.* at 1243. The *Miller* case differs from appellant's in that there is nothing to indicate that the manhole cover which caused

---

reasonable care under the circumstances to protect them from the danger. *See Youssef v. 3636 Corp.*, 777 A.2d 787, 794–95 (D.C.2001).

9. WASA argues that its regulations related to commercially owned water meters do not create a private cause of action and that the standard is not met here for implying such a remedy. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (setting forth factors relevant to determining whether a private remedy is implicit in a statute); *see also Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972, 980 (D.C.2000) (stating that a law or regulation designed to promote safety can give rise to a negligence action if plaintiff is a member of the class to be protected and statute imposes specific duties upon defendant).

Appellant does not contend that the statute, regulations or WASA's internal policies confer upon her a private cause of action under the *Cort* or *Jarrett* standards. Therefore, we need not address this question. Appellant contends, however, that WASA's internal policies *support her interpretation of the regulations.* The statute and regulations, as opposed to internal agency policies, are controlling. *See Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C.1990) (noting that agency procedures "do not have the force or effect of a statute or an administrative regulation") (citations omitted). Here, *the meaning of the statute and regulations are clear,* and must be interpreted in accordance with their plain meaning as above-described.

her to fall was hidden from view of the property owner, who had a statutory responsibility to remedy unsafe conditions related thereto. There is no rational basis to impose liability upon WASA under the circumstances. *See Rosenblatt,* 642 A.2d at 189 (declining to hold a former occupant of land liable for damages to subsequent occupier of commercial property where the activities of the former allegedly caused the land to become contaminated by toxic chemicals where the condition of the property could have been discovered by the successor occupant before occupancy). In the present case, the owner was in a position to ascertain any danger to the manhole cover and its appurtenances and had that responsibility under the applicable statute and regulations. Therefore, we conclude that there is no basis to hold WASA liable in this case under the foreseeability of harm test.[10]

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*[11]

---

10. Appellant also cites *Indianapolis Water Co. v. Schoenemann,* 107 Ind.App. 308, 20 N.E.2d 671 (1939) in support of her argument that liability should be imposed on a utility company for injuries caused by a dangerous condition of a structure which, although privately owned, was maintained and controlled by the utility company. We do not find *Schoenemann* persuasive authority for appellant's position here because in that case the stop-cock and curb in question were on public property, rather than private property, the water company retained exclusive control of the stop-cock in the curb box and provided for the curb box and how it should be set. *Id.* at 678. Possessing such control, the court found that it was bound to maintain it in a safe condition. *Id.*

11. In light of our disposition, we do not reach WASA's argument that it is shielded from liability by the public duty doctrine.