*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-944

NIGHT AND DAY MANAGEMENT, LLC, *et al.*, APPELLANTS,

v.

THOMAS M. BUTLER, *et al.*, APPELLEES,

and

No. 13-CV-1168

THOMAS M. BUTLER, *et al.*, APPELLANTS,

v.

NIGHT AND DAY MANAGEMENT, LLC, *et al.*, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CAB-8033-12)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued September 24, 2014          Decided October 23, 2014)

*Matthew August LeFande* for appellants/cross-appellees.

*David L. Shurtz* for appellees/cross-appellants.

Before FISHER and EASTERLY, *Associate Judges*, and NEBEKER, *Senior Judge*.

FISHER, *Associate Judge*:  These cross-appeals arise out of a fight at a nightclub.  Plaintiffs Thomas M. Butler, Patrick K. Glover, Gerry M. Delilly, and Richard T. Short sued the owner of the Fur Factory Nightclub, defendant Night and Day Management, LLC, and its principal, defendant Michael R. Rehman, claiming that the lack of proper security caused the injuries they sustained.  The trial court entered summary judgment for defendants because plaintiffs had not proffered the expert testimony regarding the appropriate standard of care that they would need to prevail; it also denied defendants' request for sanctions.  We affirm both orders.

## I.  Background

### A.  The Nightclub Altercation

According to declarations submitted in opposition to defendants' motion to dismiss, on February 26, 2010, plaintiffs reserved a table in the VIP section of the Fur Factory Nightclub, located at 33 Patterson Street in Northeast Washington, D.C.  At around 11:30 p.m., they arrived at the club.  There were no security personnel in the VIP section.

While in the VIP section, Short slipped and fell, knocking over a bottle of vodka which belonged to another group of patrons at a nearby table. Plaintiffs' repeated offers to pay for a new bottle were refused. Over the next fifteen minutes, tension increased between the two groups. At one point, one of the other patrons flashed gang signs at plaintiffs.

About twenty minutes after Short slipped, one of those patrons finished the remaining liquor in the bottle of vodka and broke it over Short's head. The assailant and his friends then attacked plaintiffs with broken bottles. The fight lasted ten to fifteen minutes. There were no security personnel in the VIP room when the fight began, and the cameras in the room were not working.

Club security personnel arrived after the fight was over, but they did not attempt to determine who started the fight. The assaulting patrons left without being identified or questioned. Security personnel escorted plaintiffs out of the club, but did not offer any medical assistance although plaintiffs were visibly bleeding. Plaintiffs went to Washington Hospital Center to have their injuries treated.

## B.  Fur's Agreement With the ANC

On April 29, 2008, Fur Factory Nightclub entered into an agreement with Advisory Neighborhood Commission 6C.  The nightclub was obligated to abide by the agreement in order to keep its liquor license.  The agreement provided, in pertinent part:

> b)  Establishment shall have on the premises a sufficient number of employees to assure adequate security and to control unruly patrons, whether inside or in the immediate outside area.  At a minimum, the Establishment shall have two security persons, whose sole responsibility is monitoring of the peace, order and quiet of the establishment and its immediate environs.
>
> . . . .
>
> f)  Establishment shall operate surveillance/cameras inside and outside of the Premises and preserve surveillance tapes a minimum of two weeks.
>
> . . . .
>
> h)  Establishment shall take all necessary steps to prevent patron rowdiness, including refusing admission and service to, or ejecting rowdy or unruly persons.

## C. Procedural Background

On October 11, 2012, plaintiffs filed their complaint, claiming, among other things, that the nightclub was negligent because it had not provided adequate security.[1] On July 16, 2013, the trial court granted defendants' motion for summary judgment but denied their request for attorneys' fees. The court did not base the first decision on any argument raised by the parties. Instead, relying on *Thomas v. District of Columbia*, 942 A.2d 1154 (D.C. 2008), it granted summary judgment *sua sponte* on the ground that plaintiffs could not establish the standard of care for nightclub security without presenting expert testimony. The court recognized that defendants had not raised the issue, and gave plaintiffs an opportunity to file a motion for reconsideration so that they could "identify admissible, competent evidence sufficient to carry their burden of proof."

On August 5, 2013, plaintiffs moved for reconsideration, contending that the standard of care could be established by reference to Title 25 of the D.C. Code and

---

[1] The complaint alleged another negligence claim for Short's slip and fall, a breach-of-contract claim, and a fraud claim. Those claims are not at issue in this appeal.

the nightclub's agreement with the ANC.  On August 29, 2013, the court denied the motion for reconsideration.

In the meantime, on August 19, 2013, defendants appealed the trial court's denial of attorneys' fees.  On September 14, 2013, plaintiffs tendered a notice of appeal from the court's summary judgment order and moved for leave to file it pursuant to D.C. App. R. 4 (a)(5)(A).  On October 16, 2013, the court granted that motion.  Defendants moved to dismiss, contending that this court has no jurisdiction over plaintiffs' cross-appeal because it was late.  We consolidated the appeals and ordered the parties to address the jurisdictional issue in their briefs.

## II.  Summary Judgment

We review the trial court's grant of a motion for summary judgment *de novo*, and affirm the judgment only if there is no genuine issue of material fact remaining after taking all inferences in favor of the non-moving party.  Super. Ct. Civ. R. 56 (c); *Steele v. Salb*, 93 A.3d 1277, 1281 (D.C. 2014).  Once the movant has made a sufficient evidentiary showing to support the motion, the opposing party's response "must set forth specific facts showing that there is a genuine issue for trial."  Super. Ct. Civ. R. 56 (e); *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d

1014, 1019 (D.C. 2013). It is appropriate to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Doe v. Safeway, Inc.*, 88 A.3d 131, 132-33 (D.C. 2014).

## A. Granting Summary Judgment *Sua Sponte*

Although plaintiffs do not challenge the trial court's decision on procedural grounds, we first discuss whether summary judgment was properly granted on a ground the trial court raised *sua sponte*. As we have recognized, "[a] court may grant summary judgment *sua sponte* when it appears that a party cannot prevail on a claim or defense as a matter of law, so long as the losing party was on notice that it had to come forward with all of its evidence." *Thomas v. District of Columbia*, 942 A.2d 1154, 1158 (D.C. 2008). In determining whether summary judgment was properly granted *sua sponte*, our decisions have focused on whether the losing party had adequate notice. *See, e.g.*, *Embassy of Pakistan, IIS v. Lenkin Co. Mgmt.*, 996 A.2d 817, 819 (D.C. 2010) (holding that Rule 56 (c) requires the trial court to give a party at least ten days' notice before granting a motion to dismiss that it converted into a motion for summary judgment *sua sponte*); *Thomas*, 942

A.2d at 1158 (*sua sponte* grant of summary judgment proper where losing party "was not prejudiced by any lack of notice"); *Tobin v. John Grotta Co.*, 886 A.2d 87, 91 (D.C. 2005) (trial court erred in granting summary judgment *sua sponte* without giving losing party "prior notice and an opportunity to oppose that course of action").

By granting summary judgment before giving plaintiffs an opportunity to respond to the issue it had raised *sua sponte*, the trial court unnecessarily complicated the record and the calculation of the time for noting an appeal. It would have been preferable for the court to defer ruling on the motion for summary judgment, raise the issue with both parties, and give them adequate time to respond before deciding the motion. That procedure would have alleviated any concerns that plaintiffs were prejudiced by the manner in which summary judgment was granted.

Nevertheless, plaintiffs were given notice of the expert testimony issue and the opportunity to submit more evidence in a motion for reconsideration. The trial court evaluated that motion under the Rule 56 standard for summary judgment

instead of the more demanding standards which apply to motions filed under Rule 59 (e) or Rule 60.  Thus, plaintiffs ultimately did not suffer any prejudice.[2]

## B.  Necessity of Expert Testimony

To prevail on a claim of negligence, a plaintiff must prove "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (en banc).  "In the District of Columbia the applicable standard for determining whether an owner or occupier of

---

[2]  Defendants contend that plaintiffs' cross-appeal should be dismissed because they did not file a timely notice of appeal.  Although a party normally must file a notice of appeal within thirty days, D.C. App. R. 4 (a)(1), the trial court may extend the time for filing a notice of appeal if the party files the notice no later than thirty days after the notice of appeal was due and shows "excusable neglect or good cause."  *Clark v. Bridges*, 75 A.3d 149, 153 n.8 (D.C. 2013) (quoting D.C. App. R. 4 (a)(5)(A)).  The decision to grant an extension of time to appeal is reviewed for abuse of discretion.  *Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 124 (D.C. 1992) (citing *Trezevant v. Trezevant*, 403 A.2d 1134, 1137 (D.C. 1979)).

Plaintiffs tendered a notice of appeal and moved for an extension of time on September 14, 2013, thirty days after any appeal from the July 16, 2013, order was due.  *See* D.C. App. R. 4 (a)(1), (6); D.C. Super. Ct. R. 54 (a).  Plaintiffs delayed in filing a notice of appeal because of a pending motion for reconsideration, which the trial court was obliged to consider because it had granted summary judgment against plaintiffs on an issue it raised *sua sponte*.  We therefore find no abuse of discretion in the trial court's granting, for good cause, plaintiffs' request for an extension of time to file a notice of appeal.

land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *District of Columbia Hous. Auth. v. Pinkney*, 970 A.2d 854, 866 (D.C. 2009) (quoting *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C. 1988)).

In a context that is "within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it." *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (quoting *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006)). However, if the subject of the standard of care is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror[,] . . . expert testimony is required in order for a plaintiff to meet this burden." *Id.* Accordingly, we have affirmed trial court rulings that expert testimony is required to establish the standard of care in negligence cases that involve "issues of safety, security and crime prevention." *Varner*, 891 A.2d at 267; *see also Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908-10 (D.C. 2001).

In *Hill*, for example, the appellant was injured when a rush of people caused her to fall on a stairway while leaving an inauguration ceremony at a church. *Hill*,

779 A.2d at 907. She claimed that the church was negligent in not using ushers to control the crowd while people were leaving. *Id.* at 907-08. We held that though the process of entering and leaving large events was within the common knowledge of the average juror, establishing security for such events was not. *Id.* at 910. Thus, we held that, without expert testimony, "the jury would be left to sheer speculation as to various types of crowd control, what level of measures is generally accepted as reasonable in such circumstances, and the relation of such measures to possible mishaps in the exiting process." *Id.*

In this case, plaintiffs claimed that the nightclub was negligent because security personnel did not intervene in the fight. But plaintiffs took no discovery and provided no evidence regarding how many guards were on duty the night of the fight, how they were deployed, or why they did not intervene. This is the type of information an expert would need to formulate an informed opinion on the appropriate standard of care and whether it was breached. Even assuming that there were no security guards or working security cameras in the VIP room when the fight occurred, those facts cannot establish, by themselves, what the nightclub security arrangements should have been. Such issues are generally beyond the common knowledge of the average juror. *See Hill*, 779 A.2d at 910. Without

expert testimony or some other evidence of the standard of care, a jury could resolve plaintiffs' negligence claim only through sheer speculation.[3]

## C.  Other Sources for the Standard of Care

Plaintiffs contend, at length, that the standard of care in this case may be provided by statute, rather than expert testimony, under the doctrine of negligence *per se*.  "To prevail on a negligence *per se* theory, the plaintiff may, in certain circumstances and under specified conditions[,] rely on a statute or regulation as proof of the applicable standard of care."  *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997) (internal quotations and alteration omitted).  Violation of a statute or regulation may constitute negligence *per se* only "if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected by the statute, and if the defendant is a person upon whom the statute imposes specific duties."  *Ginsberg v. Granados*, 963 A.2d 1134, 1140 (D.C. 2009) (quoting *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998)).  Moreover, the statute or regulation "must not merely repeat the common law duty of reasonable care, but must set forth specific guidelines to govern behavior."  *Chadbourne v.*

---

[3]  While plaintiffs did provide evidence that the nightclub's security cameras were not working, a jury would have to engage in speculation about the reasons why the cameras were not working in order to find defendants negligent.

*Kappaz*, 779 A.2d 293, 296 (D.C. 2001) (quoting *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996)).

We have held that the standard of care in a negligence action can be established by D.C. Code § 25-781 (b), the statutory obligation of liquor licensees not to permit minors or intoxicated persons to drink on their premises. *Jarrett v. Woodward Bros.*, 751 A.2d 972, 984-85 (D.C. 2000); *Rong Yao Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268, 1276 (D.C. 1987).[4] Plaintiffs claim that the applicable standard of care in this case can be derived from § 25-402, which requires nightclubs to submit a security plan with a liquor-license application. D.C. Code § 25-402 (d) (2010 Supp.).

Section 25-781 (b) specifically states that liquor licensees may not allow minors or intoxicated persons to drink on their premises. D.C. Code § 25-781 (b) (2001). In contrast, § 25-402 (d) only requires that a security plan be submitted with a nightclub's liquor-license application, which is subject to review by the Alcoholic Beverage Control Board. D.C. Code §§ 25-402 (d), -433 (2010 Supp.).

---

[4] Although plaintiffs contend that the nightclub violated § 25-781 (b) by allowing their assailants to drink on the premises, the statute only imposes limits with respect to minors, intoxicated persons, or persons of "notoriously intemperate habits." D.C. Code § 25-781 (b) (2001). There is no evidence that the assailants fell into any of those categories.

Though the statute describes in great detail what topics the plan must address, the specifics are left to the discretion of the applicant and the review board. D.C. Code § 25-403 (g) (2010 Supp.). Accordingly, a standard of care cannot be imported from the statutory requirement that nightclubs submit a security plan with their license applications. *Cf. Carleton v. Winter*, 901 A.2d 174, 179-80 (D.C. 2006) (declining to import standard of care from statute generally defining a realtor's obligations). Moreover, even if the nightclub's security plan could provide the standard of care, plaintiffs did not submit it to the trial court.

Plaintiffs alternatively claim that the agreement between the nightclub and the ANC provides the standard of care for security in this case because "[a] jury could infer the connection between D.C. Code § 25-403 and the security plan agreed to by the ANC and FUR . . . ." They contend that violation of the agreement was negligence *per se* because the nightclub was obligated to comply with the agreement to keep its liquor license.

However, the agreement contains no specific instructions on how the security of the nightclub is to be arranged. For example, it states that the nightclub "shall have on the premises a sufficient number of employees to assure adequate security and to control unruly patrons, whether inside or in the immediate area." It

also states that the nightclub "shall operate surveillance/cameras inside and outside of the Premises and preserve surveillance tapes a minimum of two weeks." Those general requirements, using terms such as "sufficient" and "adequate," grant the nightclub considerable discretion and do not specifically outline any standards through which its day-to-day security can be evaluated. The agreement therefore cannot establish the standard of care under a theory of negligence *per se*.[5]

Plaintiffs failed to provide evidence of the applicable standard of care. Accordingly, the judgment on appeal is

*Affirmed.*[6]

---

[5] Even if the agreement did provide specific instructions, guidelines such as internal policy manuals cannot provide the standard of care under the doctrine of negligence *per se*. *See, e.g.*, *Clark*, 708 A.2d at 636 (suicide prevention plan for juvenile detention facility); *Morgan v. District of Columbia*, 468 A.2d 1306, 1317-18 (D.C. 1983) (en banc) (police department general orders). While the agreement may be admissible as bearing on the standard of care, expert testimony is still necessary to establish that standard. *See Clark*, 708 A.2d at 636.

[6] We need not devote much discussion to defendants' separate appeal from the denial of their repeated motions for sanctions. Under Super. Ct. Civ. R. 11, sanctions may be imposed on attorneys or parties that have not made a reasonable inquiry into whether the claims they allege in a complaint are supported by the law and the facts, or will be after adequate discovery. Super. Ct. Civ. R. 11 (b), (c).

In this case, plaintiffs clearly had a good-faith basis for thinking that the claims in their complaint were meritorious. The weaknesses in their case were

(continued…)

(…continued)
only illuminated at the summary judgment stage, after they had the opportunity to conduct discovery but failed to do so.  We therefore affirm the trial court's refusal to sanction plaintiffs.  *See Ruesch Int'l Monetary Servs. v. Farrington*, 754 A.2d 328, 331 (D.C. 2000) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." (internal quotations omitted)).