# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 19, 2025          Decided April 14, 2026

No. 24-7124

BRUCE BUNTING AND JESSIE BRINKLEY,
APPELLANTS

v.

DISTRICT OF COLUMBIA CVS PHARMACY, LLC,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00766)

———

*Jacob M. Lebowitz* argued the cause and filed the briefs for appellants.

*Jessica L. Smith* argued the cause for appellee. With her on the brief were *Matthew W. Naparty* and *Diane V. D'Aiutolo*. *Alexandra M. Monteforte* entered an appearance.

Before: HENDERSON and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

Concurring opinion filed by *Circuit Judge* HENDERSON.

RAO, *Circuit Judge*: In this slip and fall case, the district court granted summary judgment to CVS. Because the plaintiffs created a genuine issue of material fact as to whether the walkway outside the store was dangerously slippery, we reverse the grant of summary judgment on plaintiffs' negligence claim. We affirm, however, summary judgment for CVS on the negligence *per se* claim. Accordingly, we vacate in part and remand for further proceedings consistent with this opinion.

I.

On the morning of Christmas Eve, Bruce Bunting fell hard as he exited a CVS store in the District of Columbia. The surface he slipped on was covered in a mix of salt (or some de-icing material) and water. Photographs taken shortly after his fall captured the walkway's wet condition, and there is no indication the walkway was icy. As a result of his fall, Bunting suffered a significant ankle injury.

Bunting and his wife filed suit against District of Columbia CVS Pharmacy, LLC, in D.C. Superior Court alleging negligence, negligence *per se*, and loss of consortium under D.C. law.[1] To support their negligence claim, the Buntings advanced two primary theories: first, that CVS failed to take reasonable steps to ensure the walkway was not dangerously slippery, and second, that CVS failed to warn Bunting of the hazard. The Buntings also maintained they could establish negligence *per se* because CVS's maintenance of the walkway

---

[1] The Buntings do not dispute their loss of consortium claim is derivative, requiring dismissal if their negligence claim does not survive summary judgment.

violated D.C. municipal safety regulations. CVS timely removed the case to federal district court.

The Buntings and CVS obtained expert reports to support their positions. The Buntings' first report was from Gregory Harrison, a registered professional civil engineer. Their second was from Lisa Rose, a certified expert in snow and ice management. CVS relied primarily on the expert testimony of Alexandra Maddox, a mechanical and biomedical engineer. The experts focused on the walkway's static coefficient of friction ("COF")—a standard measure where lower values indicate a more slippery surface. The parties agreed the applicable standard of care requires that walkways be maintained with a COF at or above 0.50.

The expert testimony produced by both parties demonstrated that the walkway may have had a COF below 0.50 when wet. The Buntings' expert Harrison indicated the walkway outside the CVS was dangerously slippery when wet, with a COF below the 0.50 standard of care. He explained that "Bunting's type of fall injury incident simply could not have happened unless the walkway surface was very slippery and far below" a COF of 0.50. In his deposition, he emphasized the case "was just not a close call." CVS's expert similarly produced field notes indicating that a portion of the walkway near where Bunting fell had a COF of 0.49 when wet.

The district court granted CVS's motion for summary judgment. With respect to the negligence claim, the court reasoned that the Buntings were required to introduce expert testimony to establish the standard of care. It then held the Buntings had failed to produce expert testimony creating a genuine issue of material fact as to whether CVS breached the 0.50 COF standard of care because Harrison had only tested the walkway with water, rather than with a mix of salt and water.

The district court explained that the Buntings' failure to show that the walkway was unreasonably dangerous defeated their other negligence theories, including their contention that CVS breached a duty to warn Bunting of the hazard. Because the district court concluded this failure independently sustained the grant of summary judgment on the Buntings' negligence claim, it did not reach CVS's alternative arguments premised on CVS's lack of notice of the hazard and the inadmissibility of the Buntings' expert testimony under Federal Rule of Evidence 702. The district court also granted summary judgment to CVS on the negligence *per se* claim because the relevant municipal regulations did not impose a duty distinct from the common law duty of care. The Buntings timely appealed.

## II.

We review the district court's grant of summary judgment de novo. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). We are not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" to be evaluated by the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Because this diversity case is governed by D.C. tort law, we interpret the requirements of D.C. law consistent with decisions of the D.C. Court of Appeals. *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 843 (D.C. Cir. 2007).

5

III.

We consider in turn whether summary judgment was proper with respect to the Buntings' negligence and negligence *per se* claims.

A.

To prevail on a negligence claim under D.C. law, "a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused an injury to the plaintiff." *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 507 (D.C. 2023). "In the District of Columbia[,] the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014) (cleaned up). The D.C. Court of Appeals has made clear that "an owner of property has a duty to exercise reasonable care to cure a dangerous condition if (1) he has actual or constructive notice of the condition and (2) he has the right to exercise control over the condition." *Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008). Moreover, property owners have a duty to warn invitees of dangerous conditions that are "peculiarly foreseeable" to the owner but not to others. *Wash. Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 24–25 (D.C. 2009).

Under D.C. law, plaintiffs are sometimes required to establish the standard of care and corresponding breach of that standard through expert testimony. "In determining whether expert testimony is required to carry a plaintiff's burden of proof, [D.C. courts] ask whether lay jurors would be able to grasp the issues without expert assistance." *KS Condo*, 302 A.3d at 508 (cleaned up). The essential inquiry is "whether the

issues are beyond an average juror's grasp or ken." *Id.* at 508 n.2. D.C. courts "have previously required expert testimony in negligence cases which involve issues of safety, security and crime prevention," but whether such testimony is required for the plaintiff to meet the burden of proof always "depends on the circumstances of the particular case." *Jenkins v. Red Coats, Inc.*, 339 A.3d 104, 107 (D.C. 2025) (cleaned up).

The D.C. Court of Appeals has recently emphasized that "[o]utside the realm of professional malpractice cases, … causes of action that *require* expert testimony are rare." *KS Condo*, 302 A.3d at 509 (cleaned up). "[I]n a typical slip and fall case, lay people serving on a jury often do not require expert assistance to determine if a warning was adequate to apprise passersby of the dangerous condition." *Jenkins*, 339 A.3d at 108. In such cases, jurors may employ their "common knowledge and everyday experience" to determine whether a proprietor "exercised reasonable care in warning passersby of the hazard caused by [a] wet floor." *Id.* at 109.

At this stage of the proceedings, the district court erred in granting summary judgment to CVS on the Buntings' negligence claim.[2]

As an initial matter, we agree with the district court that the Buntings need expert testimony to show the walkway was

---

[2] Our review focuses only on the issues decided by the district court, recognizing CVS's alternative arguments have not yet been addressed. Following the district court, we assume for purposes of this appeal that all expert testimony provided by Harrison and Rose is admissible. In subsequent proceedings, the district court must fulfill its "gatekeeping role" under Federal Rule of Evidence 702 and assess whether the Buntings have proffered admissible expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597

dangerously slippery. The Buntings' negligence theories hinge on whether CVS maintained a dangerously slippery walkway. Because the Buntings seek to demonstrate the COF fell below a reasonably safe level when wet, the district court correctly concluded they have adopted a theory of liability that requires expert testimony. The coefficient of friction is a matter "beyond an average juror's grasp or ken." *KS Condo*, 302 A.3d at 508 n.2; *cf. Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) ("[M]atters of slip resistance and surface friction are beyond the understanding and experience of the average lay citizen.") (cleaned up). And the mere presence of water and salt on an outdoor walkway—a common sight in winter—does not constitute a "hazard open and notorious" that can be understood absent expert testimony. *Cosio v. District of Columbia*, 940 A.2d 1009, 1010 (D.C. 2008). Nor have the Buntings advanced other evidence or theories of negligence that might obviate the need for expert testimony. The expert testimony regarding the dangerousness of the walkway is essential to the Buntings' negligence claim.

Nonetheless, the district court erred when it granted summary judgment to CVS because the expert testimony created a genuine issue of material fact as to whether the walkway was dangerously slippery. Both parties agreed that a COF of 0.50 represents the standard of care, drawing on national standards such as those from the American National Standards Institute. Harrison's testimony indicated that Bunting's fall occurred when the walkway's COF was below 0.50. Moreover, CVS's expert Maddox produced field notes

---

(1993). We also do not address whether CVS "ha[d] actual or constructive notice of the condition," which the district court must determine in the first instance. *Campbell*, 962 A.2d at 266. On remand, the district court should address CVS's alternative arguments and then may again consider whether summary judgment is warranted.

indicating that an area near the door where Bunting slipped had an average COF of 0.49 when wet. D.C. courts have credited similar testimony as sufficient to create a triable issue of material fact regarding a surface's dangerousness in slip and fall cases. *See Reeves v. Wash. Metro. Area Transit Auth.*, 135 A.3d 807, 809, 812, 813 n.8 (D.C. 2016); *Lewis v. Innovative Facilities Sols.*, 2018 WL 10561256, at *3 (D.C. Super. Ct. Jan. 11, 2018). On this record, drawing all inferences in favor of the Buntings, a reasonable jury could conclude that CVS breached the applicable standard of care by maintaining an unreasonably dangerous walkway and failing to cure or warn about the danger.

The district court granted summary judgment to CVS in part because the experts failed to conduct their testing with a combination of salt and water. But the inability of any party to positively identify the salt-like substance that was present does not preclude a jury trial. We must draw all inferences in the Buntings' favor at this stage, and a reasonable jury could conclude from the evidence that the salt (or salt-like substance) did not meaningfully mitigate the dangerously slippery surface.

Beyond the testimony showing the walkway was dangerously slippery, no further expert testimony is required for jurors to understand issues pertaining to CVS's duty of care under the circumstances of this case. The D.C. Court of Appeals has emphasized that "[i]n the mine-run of cases, questions of negligence are within the realm of common knowledge and everyday experience, as they are grounded in ordinary judgments of reasonableness." *KS Condo*, 302 A.3d at 509 (cleaned up).

Because at this stage of the proceedings a reasonable jury could conclude the walkway was unreasonably dangerous, it

was error to grant summary judgment to CVS on the Buntings' negligence claim.

## B.

We next turn to the Buntings' negligence *per se* claim. The district court granted summary judgment on the claim that CVS committed negligence *per se* by violating D.C. Municipal Regulation ("DCMR") section 2000.5, which provides: "No person shall occupy with, place, or leave, or cause to be placed or left on public space, any wet paint or other slippery or sticky substance, or any deposit dangerous to life and limb, without protecting and guarding that public space." [3] 24 DCMR § 2000.5. The Buntings alleged that by leaving a mix of salt and water on the walkway and failing to "protect[] and guard[]" the space, CVS violated the regulation and thus committed negligence *per se*.

Under D.C. law, the doctrine of negligence *per se* permits a plaintiff to, "in certain circumstances and under specified conditions, rely on a statute or regulation as proof of the applicable standard of care." *Butler*, 101 A.3d at 1039 (cleaned up); *Ginsberg v. Granados*, 963 A.2d 1134, 1140 (D.C. 2009) (setting out the conditions). To establish negligence *per se*, "the statute or regulation 'must not merely repeat the common law duty of reasonable care, but must set forth specific guidelines to govern behavior.'" *Butler*, 101 A.3d at 1040 (cleaned up).

The district court properly granted summary judgment to CVS on this claim. Assuming arguendo that the walkway is a "public space" where the regulation applies, a violation of section 2000.5 cannot be used to establish negligence *per se*

---

[3] The Buntings have dropped their argument that CVS's violation of 12 DCMR § PM-305G.4 also supports their negligence *per se* claim.

because it does not impose a duty that differs from the common law duty of reasonable care. Section 2000.5 requires persons to "protect[] and guard[]" public spaces if they deposit or place certain hazards there. At the same time, the D.C. Court of Appeals has explicitly connected a "duty … to *protect* … against … hazards" on a sidewalk with the common law duty of reasonable care. *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425 (D.C. 2000) (emphasis added); *cf. Odemns v. District of Columbia*, 930 A.2d 137, 142 n.8 (D.C. 2007) ("Landowners have a duty to persons lawfully upon their premises, after notice of a dangerous condition (actual or constructive), to exercise reasonable care under the circumstances *to protect* them from the danger.") (emphasis added). And a person who "occup[ies] with, place[s], or leave[s], or cause[s] to be placed or left … any deposit dangerous to life and limb" is axiomatically on notice of the hazard, so section 2000.5 does not depart from the common law's notice requirement.

Since section 2000.5 and the common law duty of care both concern the protection of other persons from known hazards, the regulation "merely repeat[s] the common law duty of reasonable care." *Chadbourne v. Kappaz*, 779 A.2d 293, 296 (D.C. 2001) (cleaned up). CVS is entitled to summary judgment because section 2000.5 cannot be used to establish negligence *per se*.

\* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment in part and remand for further proceedings consistent with this opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring: I agree with my colleagues that the Buntings must prove their negligence claim through expert testimony. By stipulating to the 0.50 Coefficient of Friction (COF) ratio as the benchmark standard of care, the Buntings injected esoterica into their case that is beyond the ken of the average juror. *See KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 508 (D.C. 2023). I write separately to highlight that, in my view, it is only by the slimmest of margins that the deposition testimony of the Buntings' "expert," Gregory Harrison, created a genuine dispute as to whether the COF of CVS's walkway was below 0.50 on the day of Bunting's fall.

Harrison testified that he tested the COF of the walkway with just "a water bottle and a shoe." J.A. 101. For the uninitiated, experts in slip-and-fall cases typically use a fine-tuned device called a Variable Incidence Tribometer to test a surface's COF because it is calibrated to yield precise measurements. *See, e.g.*, *Piazza v. Target Corp.*, No. 21-835, 2022 WL 16923867, at *1 (M.D. Fla. Nov. 14, 2022); *see also Frazza v. United States*, 529 F. Supp. 2d 61, 72 (D.D.C. 2008). Harrison pooh-poohed that "so-called scientific" method as inferior to his approach, J.A. 101, because after years of "training and experience" he had conditioned himself to become "calibrated, literally, mentally calibrated," J.A. 100, to judge a surface's COF based on nothing more than its "subjective feel," J.A. 101. After splashing a bit of water on the surface where Bunting fell and sliding his foot across it, Harrison deduced that it was "very slippery when wet" and "far below" a COF of 0.50—although he did not give any precise measurement. J.A. 112. When asked whether his method was a scientifically acceptable one, Harrison demurred, "Well, [a] judge upheld it and I've survived . . . all the *Daubert* challenges over 35 years," a feat he later conceded was "an incredible stroke of luck." J.A. 101. Nor did it much matter to Harrison that he had tested CVS's walkway using only water even though Bunting testified at his deposition that it was a granular

"slurry mixture" of salt and water that caused his fall. J.A. 77. Harrison didn't "really . . . care" about replicating those conditions in his testing—or at least trying to—because, in his view, "it's all the same, it's water." J.A. 95, 96.

Assuming Harrison's testimony was even admissible as expert evidence, I hesitate in agreeing with my colleagues that it created a genuine dispute as to CVS's breach of the standard of care. Harrison's core finding—that CVS's walkway was "very slippery" and "far below" the standard of care when wet with water—bordered on *ipse dixit*. *See* J.A. 99 ("Q. I presume you don't come up with numbers when you do this kind of a test[?] A. It's . . . subjective based on education and training."). And his view that "it's all the same, it's water" hardly proved that testing the COF of CVS's walkway under the alleged "slurry" conditions would have been unnecessary. Ultimately, however, these are issues that the district court can address when deciding whether Harrison "is qualified as an expert" to offer his opinions in this case. Fed. R. Evid. 702. With that caveat, I join the opinion in full.